*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

NATHAN J. MAZUR, FRANK ASKER,
KENNETH R. ROBSON, and DAVID YALDO,

      Plaintiffs-Appellants,

v

MICHIGAN COMMERCIAL RESOURCE
LOCATOR, INC., HATCHETT DEWALT &
HATCHETT, PLLC, JAMES P. O'NEILL,
GAGGO, INC., NOURY GAGGO, MIKE
GAGGO, SABASTIAN RESTUM, also known as
SAM AJAMI, DENNIS J. DICAPO, also known
as DENALI J. DICAPO, BARBARA F.
WILLIAMS, ROBERT L. BROWN, JESSICA
RUSH, ROSE WALTON, DAVID J. CROSS,
MARVIN HICKS, ROBERTO CARTA, CARE
FINANCIAL SERVICES, INC., and ASSET
DISPOSITION SPECIALIST, LLC,

      Defendants,

and

MARCELLUS LONG JR., PC, and MARCELLUS
LONG, JR.,

      Defendants-Appellees.

UNPUBLISHED
December 17, 2019

No.  343190
Wayne Circuit Court
LC No.  14-016133-CK

NATHAN J. MAZUR, FRANK ASKER, and
KENNETH R. ROBSON,

      Plaintiffs,

and

-1-

DAVID YALDO,

        Plaintiff-Appellee,

v

MICHIGAN COMMERCIAL RESOURCE
LOCATOR, INC., HATCHETT DEWALT &
HATCHETT, PLLC, MARCELLUS LONG JR.,
PC, MARCELLUS LONG, JR., JAMES P.
O'NEILL, GAGGO, INC., NOURY GAGGO,
MIKE GAGGO, DENNIS J. DICAPO, also known
as DENALI J. DICAPO, BARBARA F.
WILLIAMS, ROBERT L. BROWN, JESSICA
RUSH, ROSE WALTON, DAVID J. CROSS,
MARVIN HICKS, ROBERTO CARTA, CARE
FINANCIAL SERVICES, INC., and ASSET
DISPOSITION SPECIALISTS, LLC,

        Defendants,

and

SABASTIAN RESTUM, also known as SAM
AJAMI,

        Defendant-Appellant.

No. 343611
Wayne Circuit Court
LC No. 14-016133-CK

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

In Docket No. 343190, plaintiffs, Nathan J. Mazur, Frank Asker, Kenneth R. Robson, and David Yaldo, challenges the trial court's order granting summary disposition in favor of defendants Marcellus Long, Jr., and his law firm, Marcellus Long, Jr., PC ("the Long defendants"). In Docket No. 343611, defendant Sebastian Restum (a/k/a Sam Ajami) appeals a default judgment entered against him and defendant Dennis J. Dicapo (a/k/a Denali J. Dicapo). We affirm the default judgment, but reverse the grant of summary disposition as to the Long defendants.

## I. BASIC FACTS

This case arises from an alleged "illegal advance fee scheme," in which more than 50 people, including plaintiffs, were conned out of money, totaling more than $2,000,000. The purported architects behind the scheme included defendants Restum and Barbara Williams, who allegedly targeted business persons who sought commercial loans. In executing the scheme,

Restum and Williams used defendants Care Financial Services, Inc., and Michigan Commercial Resource Locator, Inc. ("Michigan Commercial") to execute the fraud. The gist of the scheme is that Michigan Commercial would agree to facilitate the procurement of commercial loans by finding nonconventional lenders. When potential clients agreed to apply for a commercial loan, they were required to pay large, advanced fees before the loan would be funded. These fees typically were paid to Michigan Commercial's attorney, Marcellus Long, Jr., and his law firm. Long would deposit the fees he received into his client trust account. After the checks cleared, Long would then retain a portion to cover his own fees before forwarding the remainder of the funds to Michigan Commercial. Long testified that at Michigan Commercial's direction, he disbursed the funds to Williams (personally), who was president of Michigan Commercial. However, no loans ever materialized, and although the facilitation agreements provided that all advanced fees would be returned if the loans did not close, no fees ever were returned.

Plaintiffs filed an 11-count complaint, raising claims of (1) breach of contract, (2) conversion, (3) unjust enrichment, (4) intentional misrepresentation, (5) negligent misrepresentation, (6) silent misrepresentation, (7) innocent misrepresentation, (8) breach of fiduciary duty, (9) conspiracy, (10) violation of the Racketeering Influence and Corrupt Organizations Act (RICO), 18 USC 1961 *et seq*., and (11) legal malpractice.

The Long defendants moved for summary disposition, arguing that there was no evidence to support any of the 11 counts against them. The trial court agreed, explaining that there is no "question of fact regarding Mr. Long, not on the conversion—alleged conversion count, not on the breach of contract count, not on the breach of fiduciary duty, nothing, because the principle item, if you will, or link that is missing is Mr. Long's knowledge or anything from which you can infer, Mr. Long's knowledge of [Restum's] criminal activities."

With regard to defendants Restum and Dicapo, a default was entered against them for their failure to appear and defend in the action. After holding an evidentiary hearing regarding the amount of damages,[1] the trial court entered default judgments in favor of each plaintiff, against Restum and Dicapo, jointly and severally. The default judgments awarded plaintiffs the following amounts: Mazur–$203,139.79; Asker–$116,677.55; Robson–$146,023.75; and Yaldo–$124,902.76.[2]

## II. DOCKET NO. 343190

Plaintiffs argue that the trial court erred in determining that there was no evidence that Long knew of Restum's criminal activities. We agree with plaintiffs that there is a question of

---

[1] Although ordered to participate at the evidentiary hearing via telephone, Restum did not participate. After several failed attempts to communicate to the imprisoned Restum over the telephone, the trial court concluded that Restum was making himself unavailable and proceeded with the hearing.

[2] These amounts included treble damages and attorney fees under MCL 600.2919a and 18 USC 1961, plus judgment interest.

fact on that matter and that the trial court erred in granting the Long defendants summary disposition.[3]

Viewed in a light most favorable to plaintiffs, there was sufficient evidence presented from which a reasonable person could find that Long knew of his client's fraudulent scheme. Long drafted the facilitation agreements for Restum. He participated in 20 transactions in which the hopeful borrower signed the agreement and made the deposit. To Long's knowledge, not one of the loans "closed," i.e., Long was aware that Restum had not secured a loan for any of the would-be borrowers. Long also served as the "payee" for the facilitation agreements, meaning that the borrowers paid his law firm the deposit money, which he then placed into his client trust account. After the checks cleared, Long would then retain some portion for his own fees before disbursing the remainder of the funds to Williams in her personal capacity. Long believed that Williams was the president of Michigan Commercial, but he could not explain why he was directed to make the cashier checks payable to Williams rather than Michigan Commercial. Similarly, when pressed on why the funds were placed in his client trust account—as opposed to direct payment to Michigan Commercial—Long simply maintained that "the money did not belong to me. It belonged to Michigan Commercial, who was my client."

Arguably, Long's testimony in and of itself casts doubt on his claim that he had no knowledge of Restum's wrongdoings. Given that the deals never closed and that Long immediately transferred the funds minus his fees to Williams in her personal capacity, a reasonable mind could infer that Long knew or had reason to know of the fraudulent scheme. In any event, in response to the Long defendants' motion for summary disposition, plaintiffs provided affirmative evidence not only of Long's knowledge but also his participation in the fraudulent scheme. In an affidavit, Asker explained how the presence of an attorney gave the facilitation agreement credibility and that he would not have entered into the agreement absent Long's involvement. Specifically, Asker recalled a meeting with Restum and Long at which material misrepresentations were made regarding the facilitation agreement. At the meeting, Asker asked Long if there was ever a deal that did not go through and Long said that had never happened, which directly contradicts his testimony that he was not aware of any deal closing. Asker also averred that Restum stated that the deposit money would be held in escrow in Long's attorney trust account, and that it would not be touch until the loan was obtained. Despite being

---

[3] We review a trial court's decision on a motion for summary disposition de novo. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001). The order granting defendants' motion for summary disposition did not specify the subsection of MCR 2.116 on which the trial court relied. However, the court determined that the exhibits did not establish a question of fact, and therefore the court was plainly granting summary disposition under MCR 2.116(C)(10), which is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001). "A court reviewing a motion under MCR 2.116(C)(10) must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139; 753 NW2d 591 (2008) (cleaned up).

present for those assurances, Long promptly transferred Asker's deposit funds to Williams once the check cleared.

Plaintiffs' evidence establishes a question of fact as to Long's knowledge of Restum's criminal activity.[4]  According to Asker's affidavit, Long represented to Asker that every facilitation agreement with Michigan Commercial resulted in a loan being obtained, when in fact the opposite was true.  He also stood by as Restum assured Asker that his funds would not be touched unless closing occurred, only to then disburse the deposit funds as soon as the check cleared.  For purposes of discerning Long's knowledge of the fraud, it is irrelevant whether the facilitation agreement permitted him to disburse the deposit per Michigan Commercial's direction.  What matters for present purposes is that Long allegedly heard Restum tell Asker something about the agreement that Long knew not to be true.  If believed by the jury, that is plainly strong evidence that Long was aware of the fraud being perpetrated on plaintiffs.  For those reasons, the trial court erred in granting summary disposition on the grounds that Long lacked knowledge of the fraudulent scheme.[5]

## III.  DOCKET NO. 343611

### A.  SUFFICIENCY OF THE EVIDENCE TO ESTABLISH RESTUM'S LIABILITY

In his appeal, Restum argues that there was no evidence establishing his liability for plaintiffs' claims.  Restum's argument fails to recognize the effect of the default that was entered against him.  Restum frames the issue as if the trial court had found Restum liable on the merits, after a trial or after some other presentation and evaluation of the evidence.  However, no trial was held, and summary disposition was not considered with respect to plaintiffs' claims against Restum.  Instead, a default was entered against Restum.  When a default is entered against a party, all well-pleaded assertions in the complaint are considered admitted by that party.  *Epps v*

---

[4] Plaintiffs ask that we take judicial notice that, after the trial court decided the motion for summary disposition, Long pleaded guilty to conspiracy to commit mail and wire fraud, 18 USC 371, for his involvement in the fraudulent scheme.  Generally, a party may not expand the record on appeal.  *Kent Co Aeronautic Bd v Dep't of State Police*, 239 Mich App 563, 579-580; 609 NW2d 593 (2000).  We question whether that rule applies, however, when the proffered evidence could not have existed at the time the underlying motion was decided.  Regardless, we need not decide that issue because the record evidence as of the time the motion was decided establishes a question of fact as to Long's knowledge of and involvement in the scheme.

[5] We decline to consider whether summary disposition was warranted on any other ground.  The trial court offered no other justification for its ruling, nor did it address the individual counts.  Rather, the court determined that Long's lack of knowledge was dispositive.  Indeed, the Long defendants repeatedly emphasized Long's purported lack of knowledge in their motion for summary disposition, and it is the moving party's initial burden to establish that summary disposition is warranted under MCR 2.116(C)(10).  *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016).  Further, the Long defendants have not filed an appellate brief presenting an alternative ground for affirmance.

*4 Quarters Restoration, LLC*, 498 Mich 518, 554; 872 NW2d 412 (2015). Thus, it is necessary to consider whether the complaint sufficiently pleaded facts to show that Restum was liable.[6] See *State ex rel Saginaw Prosecuting Attorney v Bobenal Investments, Inc*, 111 Mich App 16, 22; 314 NW2d 512 (1981), citing *Hofweber v Detroit Trust Co*, 295 Mich 96; 294 NW 108 (1940).

Restum first claims that there was no evidence to show that he received any of the funds in question, and accordingly, there was insufficient evidence to link him to the scheme perpetuated against plaintiffs. In the complaint, plaintiffs alleged, *inter alia*, that Restum converted the funds plaintiffs deposited for his own use and benefited from the possession and use of the funds. Thus, Restum's claim that there was no evidence to show that he had received any of the funds is not persuasive, because he has admitted, by virtue of the default entered against him, that he did receive and use the funds.

Restum also argues that there was no evidence to "connect" him to any of the contracts that plaintiffs executed. But plaintiffs specifically alleged that they contracted with, among others, Restum. Thus, Restum has admitted this fact, and his claim on appeal fails.

Finally, Restum asserts that there was no evidence to show that he was connected with any commercial lending or scouting company. Instead, he claims that the evidence shows that it was Dicapo and his company that recruited plaintiffs. Whether the complaint sufficiently pleaded that Restum was connected to any of the lending companies, particularly Michigan Commercial, is beside the point. As already noted, the complaint makes numerous allegations directly against Restum. The complaint further alleges that Restum made material misrepresentations of fact, both knowingly and negligently, to each of the plaintiffs regarding the return of the advanced funds. More specifically, the complaint alleged that Restum

> [o]rganized, operated and directed a conspiracy to defraud the Plaintiffs of their funds; fraudulently held himself out to be a legitimate broker of commercial loans to business clients; executed and delivered to the Plaintiffs fraudulent documents; participated in the conspiracy to fraudulently take possession of and converted the funds of the Plaintiffs; directed other Defendants in the operation of the conspiracy to defraud the Plaintiffs of their funds[.]

Therefore, with all of these well-pleaded assertions deemed admitted by Restum, he cannot show that there was an insufficient basis to establish his liability under plaintiffs' various theories of recovery.

## B. EVIDENTIARY HEARING

---

[6] Such a review is a question of law that this Court reviews de novo. See *Bobenal Investments*, 111 Mich App at 22-24; cf. *Maiden v Rozwood*, 461 Mich 109, 118, 119-120; 597 NW2d 817 (1999) (stating that review of the legal sufficiency of a complaint, in the context of summary disposition, is de novo).

Restum raises many issues related to the evidentiary hearing that was held. However, these issues are not preserved because they were not raised before the trial court. See *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Accordingly, our review is for plain error affecting substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). An error affects substantial rights when it would have affected the outcome of the proceeding. *Richard v Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 273; 824 NW2d 573 (2012).

## 1. DUE PROCESS

Restum argues that he was denied due process because the trial court held the evidentiary hearing on damages without his presence. We disagree.[7]

Procedural due process generally requires notice and an opportunity to be heard before an impartial tribunal. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 213; 761 NW2d 293 (2008). Restum's argument focuses on the second due-process component: the opportunity to be heard at the evidentiary hearing.

MCR 2.603(B)(3)(b)(*ii*) provides that, after a default has been entered, a trial court may conduct hearings to "determine the amount of damages." The trial court did conduct such a hearing in this case. However, Restum was in federal prison at the time. To facilitate Restum's presence, the trial court took steps to have Restum participate via teleconference, including ordering him to do so. Despite having notice of the time of the hearing, the trial court's attempts to have Restum participate were unsuccessful. Many of these attempts ended with the person on the other end of the line refusing to identify himself and hanging up. The trial court found that Restum was making himself "unavailable."

Although the record does not establish with certainty the identity of the person the clerk spoke to on the phone, we are not left with a definite and firm conviction that the trial court erred by finding that it was Restum, who deliberately refused to make himself available. Because Restum was given an opportunity to participate at the hearing, he was afforded due process. We also note that his actions, as found by the trial court, of intentionally making himself unavailable constituted a waiver, which extinguishes any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Moreover, to the extent that the court erred by holding the hearing without Restum's participation, Restum has failed to show that the error affected the outcome of the proceeding. Restum has failed to put forth any argument whatsoever addressing how his presence, telephonic or otherwise, would have altered the outcome. Importantly, the hearing was solely addressing

---

[7] We review any of the court's factual findings for clear error. *Speicher v Columbia Twp Bd of Election Comm'rs*, 299 Mich App 86, 94; 832 NW2d 392 (2012). A finding is clearly erroneous when the reviewing court is left with "a definite and firm conviction" that the trial court made a mistake. *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 381-382; 652 NW2d 474 (2002).

plaintiffs' damages. Restum's liability already had been established by the default entered against him. Indeed, through the entry of the default, Restum had already admitted that Mazur had paid and lost $61,000, Asker had paid and lost $21,500, Robson had paid and lost $43,500, and Yaldo had paid and lost $37,000. Therefore, no evidentiary hearing was needed for these portions of the damages. The only portions of the awarded damages that were not captured in plaintiffs' complaint were attorney fees[8] and $13,000 in extra or consequential damages that Asker had incurred. Restum has failed to explain how his presence would have affected the amount of damages awarded. Even in his arguments on appeal, Restum does not assert that the amounts of damages were incorrect; instead, his arguments on appeal primarily focus on his liability, which is not permissible because "default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." *Wood v DAIIE*, 413 Mich 573, 578; 321 NW2d 653 (1982). Therefore, even if it was improper to proceed with the evidentiary hearing without Restum's participation, the error did not affect the outcome, which precludes relief on this unpreserved issue. See *Richard*, 297 Mich App at 273.

### 2. "INTERJECTING" OF INFORMATION RELATED TO FEDERAL PROCEEDING

Restum argues that the trial court at the evidentiary hearing improperly admitted "federal communications" pertaining to the federal criminal proceedings against him. Although Restum's argument is difficult to follow, he appears to be complaining about the evidence at the evidentiary hearing showing that Restum had pleaded guilty related to his "activity involved in the scam." At the outset, regardless of the admissibility of this evidence, Restum cannot establish any prejudice, which is necessary to succeed on this issue. See *Richard*, 297 Mich App at 273. Once again, Restum conflates the purpose of the evidentiary hearing—it was to establish damages, not to establish liability. The plea only seemingly would relate to Restum's liability. Therefore, whether he had pleaded guilty to any criminal activity is wholly irrelevant for the purpose of establishing the amount of plaintiffs' damages. Indeed, the amounts of damages that plaintiffs incurred were admitted at the hearing without reference to any "federal communications." As a result, Restum has failed to show how he is entitled to relief on this issue.

### 3. "SEPARATE AND DISTINCT" ANALYSIS

Restum next argues that the trial court should have engaged in further or more detailed analysis at the evidentiary hearing. We take Restum's position to be that the trial court should have analyzed his liability under each of the counts plaintiffs brought. Restum's argument presupposes that if the trial court had engaged in such analysis, it would have determined that he was not liable under plaintiffs' various claims of recovery. Once again, however, the purpose of the evidentiary hearing was only to determine plaintiffs' damages. Restum's liability had

---

[8] Under the "American rule," attorney fees normally are not recoverable. *Haliw v City of Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005). But they are recoverable when authorized by statute, *id.*, and in this instance, plaintiffs relied on MCL 600.2919a for the recovery of attorney fees and the trebling of damages.

already been established through the entry of the default against him. See *Epps*, 498 Mich at 554. Thus, his argument misses the point and is devoid of merit.

### 4. ADMISSION OF YALDO AFFIDAVIT

Restum argues that an affidavit written by plaintiff Yaldo was improperly admitted at the evidentiary hearing. We disagree.

At the evidentiary hearing on plaintiffs' damages, plaintiff Yaldo was not personally present due to a family medical emergency. However, Yaldo's attorney noted that Yaldo's damages were "set forth in the complaint" and that they were also set forth in Yaldo's affidavit that was used to support his motion for entry of default and default judgment. Notably, although Yaldo's affidavit was referenced by his attorney at the hearing, there is no indication in the record that the affidavit actually was admitted into evidence. Thus, the premise for Restum's issue does not exist; i.e., Yaldo's affidavit was not admitted into evidence.

Moreover, it is fully apparent that the trial court did not rely on the affidavit when it determined Yaldo's damages. In his affidavit, Yaldo averred that he paid $47,000 to Restum in connection with obtaining a commercial loan, but the complaint alleged that Yaldo only paid $37,000. The trial court awarded trebled damages of $111,000, which corresponds to the base damages of $37,000 alleged in the complaint. Therefore, because the affidavit (1) was not admitted at the evidentiary hearing, and (2) was not otherwise considered for damages, Restum's claim of error with respect to the affidavit fails.

### 5. REFERENCE TO OTHER CODEFENDANTS

Restum next argues that plaintiffs' attorney impermissibly referred to two codefendants during the evidentiary hearing. Specifically, Restum claims that the attorney erroneously referred to Marvin Hicks and Barbara Williams, who both had been dismissed as parties. Restum's argument fails for many reasons.

First, Restum does not cite any pages of the evidentiary hearing transcript where these supposed references took place. Moreover, our review of the hearing transcript does not reveal any instances of Hicks or Williams being mentioned, let alone mentioned by plaintiffs' attorney. Second, Restum does not cite any authority that would prevent a party from referring to other codefendants or referring to actions those codefendant may have done. Regardless, it should be abundantly clear that there is no authority that would categorically preclude either a nonparty or a nonappearing party from being mentioned at a hearing.

### C. "LABELLING UP" OF CLAIMS

Finally, Restum contends that the trial court erred when it failed to recognize this case as being solely contractual. Restum asserts that the court should not have allowed plaintiffs to "label-up" a contractual dispute by turning it into "a quasi-criminal proceeding."

Restum's argument has no merit. First, to the extent that the case resembles a "quasi-criminal proceeding," it is because Restum and other codefendants had engaged in criminal activity; thus, criminal activity was involved and a necessary component of this civil case.

Second, the crux of Restum's argument is that he believes the case should have been decided solely on contractual grounds and that plaintiffs' attempt to add other counts or theories of recovery was not permissible. However, in addition to alleging facts pertaining to breach of contract, plaintiffs alleged many facts implicating other counts or theories, such as conversion and fraud. And because a default was entered against Restum, those other allegations were deemed admitted by him. See *Epps*, 498 Mich at 554. Therefore, contrary to his view that the case was solely contractual in nature, there were other aspects involved as well, and his attempt to limit this case to contract law fails.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs as the prevailing parties. MCR 7.219(A).


/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro