*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN JACKSON, LAURA JACKSON, and
WMT & D, INC., formerly known as WEST
MICHIGAN TOOL & DIE, CO.,

      Plaintiffs-Appellants,

v

BULK AG INNOVATIONS, LLC, doing business as
WEST MICHIGAN TOOL & DIE, and O. VICTOR
MOWATT,

      Defendants-Appellees.

FOR PUBLICATION
June 16, 2022
9:00 a.m.

No. 356935
Berrien Circuit Court
LC No. 20-000083-CB

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

YATES, J.

In our adversarial system, even when a defendant chooses not to engage in civil litigation, the plaintiff still bears the burden of proving damages by a preponderance of the evidence. Here, plaintiffs obtained a default against each defendant, thereby establishing liability on plaintiffs' claims for breach of contract and statutory conversion. But the trial court was unimpressed by the evidence that plaintiffs presented on damages, so the trial court awarded plaintiffs only a small fraction of the damages they requested. Plaintiffs moved for reconsideration, offering additional evidence of damages, but the trial court denied that motion. Plaintiffs then appealed. Because the trial court acted properly in setting the amount of damages in the first instance and then denying relief on reconsideration, we affirm.

## I. FACTUAL BACKGROUND

In 2003, Plaintiffs Steven and Laura Jackson bought Plaintiff WMT & D, Inc. (WMT), which operated as a manufacturing facility providing prototype engineering, production tooling, low-volume production, and tooling repair. After the Jacksons successfully operated the business for 15 years, Defendant Bulk AG Innovations, LLC (BAI) agreed to purchase WMT's assets on March 29, 2018, according to terms prescribed in an asset-purchase agreement. Compensation for WMT's assets included three years of earn-out payments as well as other consideration defined in

the asset-purchase agreement. In addition, the Jacksons stayed on as employees under the terms of employment agreements.

After BAI entered into the agreement to buy WMT's assets, Defendant O. Victor Mowatt became BAI's chief executive officer. Mowatt asked the Jacksons if BAI could retain the cash on hand and accounts receivable as a temporary loan, and the Jacksons assented. The Jacksons never received repayment of that loan, nor did BAI furnish any earn-out payments to the Jacksons. Thus, on May 1, 2020, the Jacksons and WMT filed suit against BAI and Mowatt in a complaint alleging breach of contract, conversion, and three other claims. Neither defendant filed an answer, so the court clerk entered a default against BAI on July 17, 2020, and then took similar action against Mowatt on October 21, 2020. As a matter of Michigan law, those defaults established defendants' liability, but left the matter of damages for resolution by the trial court. See *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 554-555; 872 NW2d 412 (2015).

In the fullness of time, plaintiffs moved for the entry of a default judgment against each defendant. The trial court not only afforded plaintiffs 21 days to submit evidence in support of an award of damages, but also explained that no hearing would thereafter take place unless defendants made a written request for a hearing. The trial court emphasized that point by stating that "[i]f there is no timely request for a hearing by Defendants the Court will decide damages and entry of a final judgment on the court record." In a motion for the entry of a default judgment filed on January 4, 2021, plaintiffs demanded $180,000 plus interest and reasonable attorney fees to compensate for defendants' failure to make the first year's earn-out payment. Beyond that, plaintiffs requested $317,987.16 to account for the unpaid temporary loan, and plaintiffs sought a statutory enhancement to triple that amount to $953,961.48 on the conversion claim based upon MCL 600.2919a(1).

On January 28, 2021, the trial court rendered a $207,587.14 default judgment against both defendants without conducting an evidentiary hearing. The damage award consisted of the full amount of $180,000 requested for defendants' "failure to make the earn-out payment for one year" as well as reasonable attorney fees of $27,036.50 and court costs of $550.64. Because of a "lack of evidence as to damages," however, the trial court did not award plaintiffs anything for defendants' failure to repay the loan of cash and accounts receivable. Similarly, the trial court found no basis to grant treble damages to plaintiffs under MCL 600.2919a(1).

Plaintiffs responded to the default judgment by filing a motion for reconsideration on February 18, 2021. Specifically, plaintiffs requested that the trial court "re-open this matter to consider additional evidentiary support with respect to the damages Plaintiff [sic] suffered." The trial court issued a written opinion and order denying the motion for reconsideration on March 30, 2021, and then issued a corrected opinion and order to that effect on April 20, 2021. Accurately noting that the sole issue in dispute on reconsideration concerned defendants' failure to repay the purported loan of cash and accounts receivable, the trial court observed that there was no "good cause to reopen the record and again have the Court re-evaluate the same matter another time." As a result, the trial court left standing the default judgment in the amount of $207,587.14.

## II. LEGAL ANALYSIS

The court clerk's entry of a default against each defendant rendered defendants liable on all of plaintiffs' claims. *Epps*, 498 Mich at 554. But "a default is merely an admission of liability and not an admission regarding the proper amount of damages[,]" *id.*, so plaintiffs had to carry the burden of proving their damages on each claim "by a preponderance of the evidence." *Hannay v Dep't of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014). The trial court, in rendering a default judgment for plaintiffs, considered the evidence submitted by plaintiffs and chose to award damages in the amount of $207,587.14. "As with other findings of fact, an award of damages is reviewed on appeal pursuant to the clearly erroneous standard." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 177; 530 NW2d 772 (1995). After rendering the default judgment, the trial court denied plaintiffs' motion for reconsideration. "We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 729 NW2d 228 (2008). A trial court commits an abuse of discretion "when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Turning first to the trial court's determination of damages in the default judgment that it rendered on January 28, 2021, we find no clear error in its award of $207,587.14 for plaintiffs. The trial court gave plaintiffs the full measure of damages they requested for the first earn-out payment, i.e., $180,000, augmented by their reasonable attorney fees of $27,036.50 and their court costs of $550.64. The trial court only disallowed plaintiffs' request for $317,987.16 for a loan in the forms of cash and accounts receivable as well as plaintiffs' demand to treble that amount under MCL 600.2919a(1). With respect to each of those two disallowed items, the trial court noted a "lack of evidence as to damages" in excluding those awards from the default judgment. When plaintiffs moved for reconsideration of the default judgment, they conceded in their supporting brief that "[p]laintiffs recognize additional evidence is necessary for [the trial court] to enter a judgment against [d]efendants for the forgoing damages" arising from the purported loan of cash and accounts receivable. Therefore, even plaintiffs understood that their original submission of evidence to support the claim for damages arising from the purported loan was insufficient for the trial court to render an award in their favor. Accordingly, the trial court's award of damages in the default judgment cannot possibly be characterized as clearly erroneous.

Recognizing the deficiency in the record that they created, plaintiffs tried to fill the hole in their proofs by asking the trial court in their motion for reconsideration to "re-open this matter to consider additional evidentiary support with respect to the damages Plaintiff [sic] suffered." At that point, however, the trial court had understandably lost patience with plaintiffs. As the trial court put it, there was no "good cause to reopen the record and again have the [c]ourt re-evaluate the same matter another time." In rejecting a similar type of request on reconsideration, we found " 'no abuse of discretion in denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order.' " *Woods*, 277 Mich App at 630. That same analysis applies with equal force here.

Moving beyond the procedural flaws in plaintiffs' position, we conclude that the trial court was correct on the merits. In Count One of their complaint, plaintiffs framed their claim about the unpaid loan as a breach of a verbal contract. See Complaint, ¶¶ 35-37. As a result, plaintiffs had to prove their damages for breach of a verbal contract " 'with reasonable certainty,' " *Van Buren*

*Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017), so "'uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal[.]' " *Id.* at 551. When plaintiffs filed their motion for entry of default judgment and sum certain damages on January 4, 2021, they simply stated that defendants' "failure to repay the cash and accounts receivable loan entitles Plaintiffs to $317,987.16." They offered neither an explanation nor a citation to any evidence in the record to support that assertion. The brief in support of that motion provided no guidance to the trial court. It simply stated that, "[i]n support of their motion, Plaintiffs rely on the facts set forth in their motion, the attached exhibits, as well as the authority of MCR 2.603(B)." As a result, the trial court was forced to go spelunking in the voluminous exhibits attached to the brief, which included an income statement "[f]or the Twelve Months Ending December 31, 2015," that listed among the assets of Plaintiff WMT several bank accounts and "accounts receivable" in the amount of $301,128.83. Because defendants' asset purchase did not occur until March 29, 2018, the 2015 income statement was utterly useless to the trial court in assessing damages. Thus, the trial court appropriately refused to award any damages to plaintiffs for breach of contract stemming from the purported loan of cash and accounts receivable.

In moving for reconsideration, plaintiffs promised to clean up the mess they made, but they compounded the confusion by attaching as Exhibit 4 to their motion for reconsideration a baffling trio of spreadsheets listing "reimbursed items to Steve & Laura" Jackson, "ARK receivables," and "WMTD receivables" as of March 31, 2018. The motion for reconsideration provided no guidance linking the figures in those three spreadsheets to plaintiffs' request for $317,987.16 in damages for the unpaid loan. The supporting brief did include an affidavit from Plaintiff Laura Jackson that proposed a damage figure of $339,967.78, but that figure included accounts receivable for an entity called ARK Industrial Machining Co. (which appears to be a name Plaintiff WMT used to conduct some of its business) and accounts labeled WIP (work in progress).[1] The affidavit also included interest even though the record contains no evidence that the verbal loan agreement contemplated interest on the loan. Unsurprisingly, the trial court denied plaintiffs' motion for reconsideration, and we can find no basis in the record—even as augmented on reconsideration—to disturb the trial court's refusal to award damages to plaintiffs for the unpaid loan. Try as we might, we cannot find any evidence in the record that supports an award of $317,987.16 in damages, and the lack of evidence to support such an award is fatal. See *Van Buren Charter Twp*, 319 Mich App at 551.

Nor can we find fault with the trial court's refusal to treble any such damage award under MCL 600.2919a(1). As an initial matter, the trial court had no damage award to treble on the claim for statutory conversion because the trial court properly refused to award $317,987.16 in damages. Beyond that, plaintiffs' claim for conversion in Count Five of their complaint referred to accounts receivable but made no mention of cash, see Complaint, ¶ 59, so the trial court was left to divine the portion of $317,987.15 in damages attributable to accounts receivable, rather than cash. And in any event, the trial court was entrusted with the discretion to treble—or not treble—the damages under MCL 600.2919a(1), which states that plaintiffs harmed by conversion "may recover 3 times the amount of action damages sustained[.]" As we have explained in discussing this language

---

[1] Work in progress is not an account receivable. Work in progress refers to partially finished goods awaiting completion. In contrast, accounts receivable include only financial obligations resulting from the completed sales of finished goods.

from MCL 600.2919a, "[t]he term 'may' is permissive and indicates discretionary activity." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 449; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015). Accordingly, the trial court had no obligation to award three times the amount of damages resulting from the conversion, so the trial court's refusal to do so cannot be treated as reversible error absent an abuse of discretion. Because we find no abuse of discretion on the record in this case, we must allow the trial court's ruling to stand.

Affirmed.

/s/ Christopher P. Yates
/s/ Amy Ronayne Krause
/s/ Michael J. Kelly