*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Plaintiff-Appellee,

v

ESTATE OF SONYA MARIA FORTIN,

       Defendant-Appellant.

FOR PUBLICATION
January 25, 2024
9:05 a.m.

No. 363755
Antrim Circuit Court
LC No. 21-009292-CK

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

REDFORD, P.J.

In this declaratory-judgment action, defendant appeals by right from the trial court's order granting plaintiff's motion for summary disposition and denying defendant's motion for summary disposition. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose in relation to a wrongful-death action brought by defendant following an automobile accident in which defendant's decedent, Sonya Fortin, and plaintiff's insured, Andrew Kadish, were both killed. For purposes of this appeal, plaintiff does not dispute that Kadish bore fault for the accident, and the parties generally do not dispute that plaintiff is liable to defendant for the "bodily injury" limits of plaintiff's no-fault insurance policy issued to Kadish because plaintiff's insured caused an automobile accident in which the insured and defendant's decedent were both killed. The parties, however, dispute the amount of that liability.

In the wrongful-death action, plaintiff tendered to defendant $50,000, consistent with the policy's declarations page. Plaintiff contends that amount constituted the coverage limit under its no-fault policy, based on a choice-of-coverage form executed by its insured. Defendant asserts that, in light of recent changes to the no-fault act, MCL 500.3101 *et seq.*, that went into effect as

of July 2, 2020,[1] and deficiencies in the choice-of-coverage form that Kadish purportedly executed, the policy limits were $250,000, the minimum amount required by law. Defendant contends that the choice-of-coverage form was ineffective to reduce that limit. The record indicates the following sequence of events respecting plaintiff's issuance of its policy to Kadish.

On June 22, 2020, Kadish applied through an agent for an automobile insurance policy from plaintiff. The same day, plaintiff issued no-fault insurance policy 732 6377-F22-22 (Policy 22) to Kadish with a policy period of June 22, 2020 to December 22, 2020. The declarations page of that policy provided limited coverage for bodily injury of $50,000 per person and $100,000 per accident. Under MCL 500.3009, the minimum coverage limits at the time and through July 1, 2020, were $20,000 per individual and $40,000 per accident.

On July 21, 2020, plaintiff issued Kadish no-fault insurance policy 732 6377-F22-22A (Policy 22A). The declarations page of that policy set forth the same coverage limitations of $50,000 per person and $100,000 per accident. Under MCL 500.3009, as amended, the minimum coverage limits were $250,000 per person and $500,000 per accident, subject to an insured's option to choose a reduced amount of coverage. On August 13, 2020, Kadish executed[2] a "Michigan Choice of Bodily Injury Liability Coverage Limits" form. The choice-of-coverage form referenced Policy 22, but it also identified an effective date of July 21, 2020:

---

[1] See *Progressive Marathon Ins Co v Pena*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 358849); slip op at 3 (referring to the changes as "no-fault reform measures").

[2] In the trial court, defendant disputed whether Kadish actually signed the form, but for purposes of this appeal, defendant states that Kadish "apparently signed" the form.



State Farm Mutual Automobile Insurance Company
State Farm Fire and Casualty Company

State Farm

**MICHIGAN CHOICE OF BODILY INJURY LIABILITY COVERAGE LIMITS**

| AGENCY: | APPLICANT/NAMED INSURED: | |
|---|---|---|
| Wheeler, Brett Lee 22-1504 | KADISH, ANDREW | |
| | INSURANCE COMPANY: | |
| | State Farm Mutual Automobile Insurance Company | |
| | POLICY/QUOTE NO.: 732 6377-F22-22 | EFFECTIVE DATE: 07/21/2020 |

**READ THIS ENTIRE FORM CAREFULLY**

**THE PURPOSE OF THIS FORM**

The purpose of this form is to explain the choice you have regarding your bodily injury liability insurance protection and to assist you in making that choice. Read this form carefully because the choice you make will have financial consequences.

**PART A: BODILY INJURY LIABILITY INSURANCE COVERAGE EXPLAINED**

Bodily injury liability insurance covers claims made against you for injuries to others if you are at fault in an auto accident. Michigan auto insurance policies are required to provide bodily injury liability insurance coverage of not less than $250,000 per person and up to $500,000 per accident ("$250,000/$500,000") for these claims unless you select higher or lower limits depending on the amount of protection you need. In no event can you select less than $50,000 per person and $100,000 per accident. If you do not make a selection, your policy will be issued with limits of $250,000/$500,000.

STOP — If you want bodily injury liability coverage limits of $250,000/$500,000 or more, you do NOT need to complete this form.

**PART B: INCREASED RISKS WITH LOWER BODILY INJURY LIABILITY INSURANCE COVERAGE LIMITS**

If you are responsible for injuries to another person, you may be liable for damages for their pain and suffering, as well as the costs of their medical and other care that exceed their coverage under their auto insurance policy. The bodily injury liability limit of your policy will pay for such damages, but only up to the amount of the limit you choose. You will be required to pay any amount over the limit you choose. This amount could be substantial and may lead to severe financial consequences, such as:

- Your assets may be seized, or a lien may be placed on your home;
- Your wages may be garnished; or
- Your driver's license may be suspended.

Selecting lower bodily injury liability insurance coverage limits may also affect your eligibility for an umbrella policy.

**PART C: CONFIRMATION OF UNDERSTANDING—YOU MUST READ AND INITIAL EACH LINE**

*(Initials)* — I have received a list of all the bodily injury liability coverage options available to me and the price for each option.

*(Initials)* — I understand that any bodily injury liability coverage election I make applies to me and any other person covered by this policy.

*(Initials)* — I understand that the bodily injury liability coverage limits I choose will remain the same as long as the policy is in effect or until I change them.

BY SIGNING THIS FORM, I ACKNOWLEDGE THAT: (1) I HAVE READ THIS FORM OR HAD IT READ TO ME; (2) I UNDERSTAND MY CHOICES AND THE POTENTIALLY SEVERE RISKS DESCRIBED ABOVE; AND (3) I AM CHOOSING TO PURCHASE BODILY INJURY LIABILITY COVERAGE LIMITS LOWER THAN $250,000/ $500,000.

Named Insured/Applicant Signature          Date 8/13/2020

1010691 MI                                              2000 156110 200 03-18-2020

The record does not indicate what bodily injury liability coverage options were presented to Kadish, nor does anything in the record indicate the coverage amount that he chose.

On December 2, 2020, Kadish and Fortin were involved in an automobile accident that resulted in their deaths. Defendant filed a wrongful-death action and demanded that plaintiff tender the liability limit amount which defendant contends is $250,000.

On December 8, 2021, plaintiff commenced this action seeking a declaratory judgment that, under the policy issued to Kadish, its applicable policy limits were $50,000 per person and $100,000 per accident. Defendant denied that claim and asserted that Kadish's policy, Policy 22A, absent Kadish's informed election of a different limit, provided the statutory minimum liability limit of $250,000 under provisions of MCL 500.3009.

Both parties moved for summary disposition. Plaintiff argued that the "A" designation to the policy number merely indicated a chronology designation, but when challenged, plaintiff's

counsel admitted that he did not know why plaintiff issued another policy. Plaintiff argued that the important fact was that Kadish had been properly notified about electing reduced coverage, Kadish elected reduced coverage, and the statute did not require that an insured make the liability election at any particular time. Defendant countered that plaintiff issued a new policy on July 21, 2020, which MCL 500.3009 required it to provide minimum coverage of $250,000 per person, unless the insured contemporaneously elected less coverage, which Kadish never did.

The trial court ruled from the bench that the policy issued on June 22, 2020, had been valid at the time, but the policy issued on July 21, 2020, was a "new replacement policy." The trial court observed that Kadish executed the choice-of-coverage form approximately three weeks later in which he elected reduced coverage. The trial court recognized that the choice-of-coverage form "explicitly applied to the old policy not the replacement policy" but found that the absence of the "A" suffix was either a scrivener's error or irrelevant because Kadish undoubtedly intended the form to apply "to the then existing policy." The trial court declined to read MCL 500.3009 as requiring the choice-of-policy form to be executed on the same date the policy was issued. It reasoned that policies are often issued automatically, applications are often transmitted electronically by an agent, and the form could be provided by first-class mail, so it would be difficult for all of those things to occur on the same date, and there would be "no good reason why they should occur on the same date." The trial court opined that, if the accident had occurred on August 10, 2020, "we probably would have a situation where the 250/500 limits . . . imposed by the statute would apply," but because Kadish signed and sent in the form, he had validly elected reduced limits of $50,000 per person and $100,000 per accident.

The trial court granted plaintiff's motion for summary disposition and denied defendant's motion for summary disposition. The trial court entered an order reflecting its decision. Defendant moved for reconsideration which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). "A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (quotation marks, alteration, and citation omitted). "A genuine issue of material fact exists when, viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). We review de novo as questions of law the interpretation of contracts and statutes. *MSSC, Inc v Airboss Flexible Prod Co*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 163523); slip op at 10. "When we review an issue de novo, we review this issue independently, with no required deference to the courts below." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

-4-

Defendant argues that the trial court erred by granting plaintiff summary disposition because plaintiff failed to satisfy the requirements of MCL 500.3009(5) and (7) respecting the policy it issued to Kadish, and under MCL 500.3009(8), the bodily injury liability limit of $250,000 per person applied, and Kadish's signing of the standard coverage form after the issuance of the policy could not validly reduce the statutory minimum bodily injury liability. We agree.

"The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz and Cohn LLP v Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020) (quotation marks and citation omitted). The principles applicable to interpretation of contracts are similar to the principles applicable to the interpretation of statutes. *Al-Hajjaj v Hartford Accident and Indemnity Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359291); slip op at 4. A contract must be read as a whole and internally harmonized to the extent possible, and an unambiguous contract must be enforced as written. *In re Estate of Hoppert*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 362694); slip op at 7. "[I]nsurance policies are interpreted like any other contract." *Meemic Ins Co v Fortson*, 506 Mich 287, 297; 954 NW2d 115 (2020). Insurance policies, however, may be partially governed by statute to the extent a statute requires the policy to provide certain minimum benefits. *Andary v USAA Cas Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 164772); slip op at pp 22-23. "When a contractual provision in an insurance policy conflicts with a statute, that provision is invalid," and the contract must be reformed. *Pena*, ___ Mich App at ___; slip op at 3.

The Michigan Legislature enacted the no-fault act, MCL 500.3101 *et seq*., more than 50 years ago as a system in lieu of common-law tort remedies under which motorists are required to purchase no-fault insurance policies from a private insurer to ensure that persons would receive compensation for injuries sustained in motor vehicle accidents. *Andary*, ___ Mich at ___; slip op at pp 3-4. "In 2019, the Michigan Legislature made sweeping changes to Michigan's no-fault statutes when it enacted 2019 PA 21 and 2019 PA 22." *Id*. at ___ ; slip op at 5. Relevant to this appeal, the Legislature amended MCL 500.3009 to increase the mandatory liability limits in no-fault policies issued after July 1, 2020, for bodily injury. *Pena*, ___ Mich App at ___; slip op at 3-4. The amendment also provided a procedure under which applicants for insurance may choose to purchase bodily injury liability limits as low as $50,000 per person and $100,000 per accident. *Id*. at ___; slip op at 4.

MCL 500.3009 provides in relevant part:

> (1) *Subject to subsections (5) to (8), an automobile liability* or motor vehicle liability *policy that insures against loss resulting from* liability imposed by law for property damage, *bodily injury, or death* suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle *must not be delivered or issued for delivery in this state* with respect to any motor vehicle registered or principally garaged in this state *unless the liability coverage is subject to all of the following limits*:

(a) Before July 2, 2020, a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and after July 1, 2020, a limit, exclusive of interest and costs, of not less than $250,000.00 because of bodily injury to or death of 1 person in any 1 accident.

(b) Before July 2, 2020 and subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and after July 1, 2020, and subject to the limit for 1 person in subdivision (a), a limit of not less than $500,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

* * *

(5) After July 1, 2020, an applicant for or named insured in the automobile liability or motor vehicle liability policy described in subsection (1) may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower than $50,000.00 under subsection (1)(a) and $100,000.00 under subsection (1)(b). To exercise an option under this subsection, the person shall complete a form issued by the director[3] and provided as required by [MCL 500.3107e], that meets the requirements of subsection (7).

(6) After July 1, 2020, on application for the issuance of a new policy or renewal of an existing policy, an insurer shall do all of the following:

(a) Provide the applicant or named insured the liability options available under this section.

(b) Provide the applicant or named insured a price for each option available under this section.

(c) Offer the applicant or named insured the option and form under this subsection.

(7) The form required under subsection (5) must do all of the following:

(a) State, in a conspicuous manner, the risks of choosing liability limits lower than those required by subsection (1)(a) and (b).

(b) Provide a way for the person to mark the form to acknowledge that he or she has received a list of the liability options available under this section and the price for each option.

---

[3] MCL 500.102, defines "the director" as the director of the Department of Insurance and Financial Services (DIFS).

(c) Provide a way for the person to mark the form to acknowledge that he or she has read the form and understands the risks of choosing the lower liability limits.

(d) Allow the person to sign the form.

(8) *After July 1, 2020, if an insurance policy is issued or renewed as described in subsection (1) and the person named in the policy has not made an effective choice under subsection (5), the limits under subsection (1)(a) and (b) apply to the policy.* [Emphasis added.]

As a preliminary matter, this case requires that we resolve whether Policy 22A was a distinct policy from Policy 22. This question is important because "[t]he legislative reforms concerning tort liability under the no-fault act" only affect "policies issued or renewed after July 1, 2020." *Pena*, ___ Mich App at ___; slip op at 5. If Policy 22A and Policy 22 are the same policy, then none of the changes to MCL 500.3009 that became effective on July 1, 2020, are material, and the choice-of-coverage form was unnecessary.[4] In other words, if Policy 22A is the same policy as Policy 22, the limits of $50,000 per person and $100,000 per accident as stated on the declarations pages of both Policy 22 and Policy 22A would apply. For the reasons discussed below, we conclude that Policy 22A was a distinct policy issued by plaintiff after the effective date of the no-fault reforms.

Plaintiff has not expressly conceded that it issued Policy 22A as a newly issued or renewed policy after the effective date of no-fault reform, July 1, 2020. However, plaintiff has strongly implied such a concession, and the evidence allows no other reasonable interpretation. During the motion hearing, when asked by the trial court why plaintiff issued "another policy in the middle of the terms [sic]," plaintiff's counsel replied,

I don't know why they issued the policy, and then the chronology, the designation A is put on that policy number so a new form is generated, a new policy that indicates a chronology designation.

That representation indicates that Policy 22A was a policy independently issued and distinguishable from Policy 22. Further, plaintiff's own documentation states that the policy in effect on December 2, 2020, was "Policy Number 732 6377-F22-22A including any endorsements, if applicable, for the policy term(s) 07/21/2020 to 12/22/2020." Plaintiff regarded Policy 22A as a distinct policy that had been issued and effective on July 21, 2020.

---

[4] *Pena* resolved the question of whether the no-fault reform changes affected any policies that were already in existence on July 1, 2020, and it answered that question in the negative. *Pena*, ___ Mich App ___; slip op at 4-5. Because *Pena* had not been decided until after any of the relevant events in this case, plaintiff would not have known that the choice-of-coverage form would be unnecessary even if there had never been a Policy 22A.

In an unpublished opinion, this Court has cautioned that a change in coverage does not necessarily constitute issuance or renewal of a policy. See *Bonter v Progressive Marathon Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 17, 2023 (Docket No. 360411), pp 3-4, app for lv pending.[5] In *Bonter*, this Court considered factors for determining whether an insurer had issued or delivered a policy, as opposed to some other documentation, and one of those concerned whether there had been a change in the policy number.[6] See *Bonter*, unpub op at 1-2, 4. Unlike the situation in *Bonter*, in this case, a change in policy number occurred. The record evidence establishes that the policy in effect at the time of the accident was Policy 22A and it was "issued or renewed after July 1, 2020."

Because Policy 22A was issued after July 1, 2020, MCL 500.3009 required it to provide bodily injury liability limits of at least $250,000 per person and $500,000 per accident, unless the insured chose a lower limit. MCL 500.3009(1); *Pena*, ___ Mich App at ___; slip op at 4-5. Under MCL 500.3009(8), if an insured "has not made an effective choice" of reduced coverage, the default limits of $250,000 per person and $500,000 per accident apply. Policy 22A stated in its declarations page a bodily injury liability limit of $50,000 per person and $100,000 per accident. The record reflects, and the parties do not dispute, that Kadish did not formally make any such choice—effective or not—until approximately three weeks after plaintiff issued Policy 22A. At the time plaintiff issued Policy 22A, the policy failed to provide the bodily injury liability limits required by law. The policy, therefore, was subject to reformation to provide those benefits. *Pena*, ___ Mich App at ___; slip op at 3.

The lynchpin of this case is whether Kadish's execution of the choice-of-coverage form constituted an "effective choice" of reduced liability coverage. If so, Policy 22A would provide the minimum amount of bodily injury liability coverage that could be chosen as provided under MCL 500.3009(5). If not, then the bodily injury liability limits under the policy are the minimum set by the no-fault act of $250,000 per person and $500,000 per accident as provided under MCL 500.3009(8).

Defendant presents an array of arguments that Kadish could not have made an effective choice of reduced bodily injury liability limits because plaintiff did not satisfy its obligations under MCL 500.3009(6) and because the choice-of-coverage form is itself deficient. These arguments are unpersuasive. The record reflects that plaintiff satisfied its obligations under MCL 500.3009(6), and the choice-of-coverage form that Kadish signed appears to have been "issued by the director" as required by MCL 500.3009(5) because, other than the letterhead and footer, it is

---

[5] Although unpublished opinions of this Court are not binding, they may be treated as persuasive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 359371 and 359372); slip op at 8.

[6] The other consideration in *Bonter* was that the specific documentation the insurer sent was a summary, which was "not, itself, a policy," and the fact that the later-issued summary bore the same policy number as the previously issued policy indicated that the insurer had not issued a policy on the date it sent the later summary. *Bonter*, unpub op at 4.

identical with the template form provided by DIFS.[7] The form satisfies the requirements of MCL 500.3009(7) because it clearly states that there are increased risks of choosing reduced coverage, provides a way for the person to indicate that they received the list of liability options and the prices of each option, provides a way for the person to indicate that they understand the risks and have read the form, and provides a way to sign the form. Defendant argues that the choice-of-coverage form does not state the particular amount of reduced coverage that Kadish chose, but defendant does not assert that the statute required the form to provide a place for that information. Courts may not add requirements to a statute. *Bronson Health Care Group v Esurance Prop and Cas Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363486); slip op at 7, app for lv pending. Accordingly, we decline to do so.

Defendant argues that plaintiff did not satisfy its duties to provide certain information required by MCL 500.3009(6). That subsection requires insurers to provide the form itself, enumerate the liability options available, and provide the price for each option. Defendant concedes that Kadish initialed the choice-of-coverage form, expressly indicating that he had been provided a list of all available bodily injury liability coverage options and the price for each option. The form evidences that plaintiff provided the information to Kadish. Defendant argues that plaintiff failed to provide any evidence documenting or attesting that it provided Kadish with the required information. However, defendant points to no legal requirement that the information in MCL 500.3009(6) must be provided in any particular form or format. Again, courts may not add requirements to a statute. *Bronson Health Care Group*, ___ Mich App at ___; slip op at 7. We are not persuaded that plaintiff failed to provide the information required by MCL 500.3009(6) before Kadish executed the choice-of-coverage form.

Defendant argues that MCL 500.3107e reflects a legislative intent to mandate higher coverage limits if there is any doubt whether the insured made an effective choice. MCL 500.3107e, however, only governs how the form is to be delivered and filled out. Under Subsection (1), the form "must be delivered to the applicant or named insured" by personal delivery, first-class mail, or specified electronic means. Subsection (2) provides that the form may be filled out by marking and signing it on paper, verbally instructing someone else to fill it out, or by specified electronic means. Defendant has not challenged whether the form was properly delivered to Kadish. The form he signed indicates that he filled it out by marking and signing it on paper, and defendant has not pursued on appeal any challenge to whether Kadish genuinely signed the form.

Defendant also argues that the choice-of-coverage form necessarily fails because it referred to Policy 22 rather than to Policy 22A, and that the trial court erred by effectively reforming the contract between plaintiff and Kadish. The trial court did not err in that regard, but, as discussed below, the choice-of-coverage form was ineffective because of the timing of its execution in relation to the policy's delivery or issuance.

Ordinarily, the meaning of an ambiguous contract should be decided by the trier of fact. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). The choice-

---

[7] See https://www.michigan.gov/autoinsurance/choosing-coverage/choosing-bodily-injury-coverage (accessed November 9, 2023).

of-coverage form is arguably ambiguous, because although it states Policy 22's number, it also states an effective date of July 21, 2020, the date plaintiff issued Policy 22A. A contractual provision is ambiguous if it is equally susceptible to multiple meanings. *Bridging Communities, Inc v Hartford Cas Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 355955); slip op at 8. However, irrespective of ambiguity, even at a summary disposition stage of the proceedings, courts may reform contracts that obviously do not express the intentions of the parties. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-373; 761 NW2d 353 (2008). In this case, no policy matching Policy 22's number bore an issuance date of July 21, 2020. The record reflects, however, that plaintiff issued Policy 22A on July 21, 2020. The policy number represented on the form, therefore, may reasonably be understood to have resulted from a scrivener's error. The record indicates that, by the time Kadish executed the form on August 13, 2020, Policy 22 had been replaced with Policy 22A. The trial court, therefore, did not err by treating the omission of the "A" from the choice-of-coverage form as either a scrivener's error or as nonreflective of plaintiff's and Kadish's intentions.

Defendant argues that Kadish's purported choice of reduced bodily injury liability limits lacked effectiveness and enforceability because he did not make his choice before or contemporaneously with the issuance of Policy 22A. We agree.

First, the choice-of-coverage form signified Kadish's choice and the date when made, not mere documentation or verification of the choice. The plain language of MCL 500.3009(1) requires the choice of coverage to have already been made at the time the policy is delivered or issued. A policy provision in violation of a statutory requirement is void, and therefore, cannot be reformed after the fact. Execution of the choice-of-coverage form three weeks after issuance of the policy could only signify the effective choice of reduced coverage if plaintiff had then issued another policy at that time. Plaintiff did not do so.

Plaintiff attempts to sidestep the statutory requirement by repeatedly characterizing the choice-of-coverage form as "documenting and verifying his election for coverage in the amount of $50,000 per person/$100,000 per accident." Plaintiff's argument, however, conflicts with the plain language of the statute. MCL 500.3009(5) states that "[t]o exercise an option under this subsection, the person shall complete a form . . . ." Completion of the form signifies the choice, and it is not merely documentation or verification of the choice. The question is whether making that choice three weeks after the policy was issued can be "effective."

This Court has recently interpreted another choice-of-coverage provision of the no-fault act affected by the no-fault reforms. In *Bronson Health Care Group*, this Court addressed MCL 500.3107c, which the Legislature amended "so that insurers may now offer less-than unlimited PIP coverage, provided certain statutory requirements are satisfied." *Bronson Health Care Group*, ___ Mich App at ___; slip op at 5. As amended, MCL 500.3107c(1) provides four possible coverage amounts, ranging from $50,000 per individual, MCL 500.3107c(1)(a), to unlimited coverage, MCL 500.3107c(1)(d). If an insurance policy "is issued or renewed after July 1, 2020, the applicant or named insured shall" select one of the coverage amounts on a form approved by the director. MCL 500.3107(c)(1). As with bodily injury liability coverage under MCL 500.3009, the Legislature set forth what PIP benefit coverage applies in the absence of such a selection. However, unlike MCL 500.3009, there are *two* possible outcomes under MCL 500.3107c if an insurance policy is issued or renewed in the absence of such a selection:

(3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

(4) If an insurance policy is issued or renewed as described in subsection (1), the applicant or named insured has not made an effective selection under subsection (1), and a presumption under subsection (3) does not apply, subsection (1)(d) applies to the policy.

This Court has held that MCL 500.3107c and MCL 500.3009 should be considered harmoniously. *Pena*, ___ Mich App at ___; slip op at 4.

In *Bronson Health Care Group*, the insured purchased a no-fault policy with a reduced PIP benefit coverage amount of $250,000, made a premium payment corresponding to that amount of coverage, and, later on the same day, purportedly filled out a PIP selection form. *Bronson Health Care Group*, ___ Mich App at ___; slip op at pp 2, 8. This Court expressly rejected any argument that the prescribed selection form must be provided to the insured before purchase of the policy, as well as, any "argument that the statute requires insureds to complete the PIP selection form before coverage is issued." *Id.*, ___ Mich App at ___; slip op at 6. The analysis from *Bronson Health Care Group* regarding MCL 500.3107c, however, cannot be applied directly to MCL 500.3009 due to structural differences between the two statutes.

Some of the language in the two statutes clearly share the same meaning even if the statutes are phrased slightly differently. Regarding bodily injury liability limits, MCL 500.3009(8) addresses the consequences "if an insurance policy is issued or renewed as described in subsection (1) and the person named in the policy has not made an effective choice . . ." Regarding PIP benefit coverage, MCL 500.3107c(3) and (4) both address the consequences "[i]f an insurance policy is issued or renewed as described in subsection (1), [and] the applicant or named insured has not made an effective selection . . ." The use of different words generally, but not always, connotes a difference in meaning. *Davis v BetMGM, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363116); slip op at 6, app for lv pending. The two statutory provisions appear to feature "no functional difference between the two phrases" used, "the person named in the policy" and "the applicant or named insured." See *id.*, ___ Mich App at ___; slip op at 6. The distinction between "selection" and "choice" can be explained by the fact that MCL 500.3107c specifies four discrete options (from which one must be "selected"), and MCL 500.3009 specifies only a lower limit (and some amount equal to or greater than that must be "chosen").

The consequences of failing to make an effective choice or effective selection differ significantly between the two statutes. Under MCL 500.3009, if an insurance policy is issued or renewed in the absence of an effective choice of bodily injury liability limits, the default limits apply as specified in MCL 500.3009(8). In contrast, if an insurance policy is issued or renewed in the absence of an effective selection of PIP benefit coverages, the coverage provided by the policy may depend on whether the insured already made a premium payment. See MCL 500.3107c(3) and (4). In other words, an insurance policy may provide reduced PIP benefit coverages even in

-11-

the absence of an effective selection of reduced coverage, whereas an insurance policy may *not* provide reduced bodily injury liability coverage in the absence of an effective choice of reduced coverage. The issue in *Bronson Health Care Group* is distinguishable from the issue presented in the case at bar, so that case does not resolve the question of whether an insured may belatedly elect reduced bodily injury liability coverage under MCL 500.3009.

Relevant to this case, the plain language of MCL 500.3009(8) provides that "if an insurance policy *is* issued or renewed . . . and the person named in the policy *has not* made an effective choice," then the default liability limits apply (emphasis added). The words "has" or "have" "generally indicate[] action that was started in the past and has recently been completed or is continuing up to the present time." *Girard v Wagenmaker*, 437 Mich 231, 242; 470 NW2d 372 (1991) (quotation marks and citation omitted). The verbs "has" and "have" can indicate past tense. See *People v Stewart*, 472 Mich 624, 632; 698 NW2d 340 (2005). In contrast, the word "is" "unambiguously connotes present tense." *People v Hofman*, 339 Mich App 65, 72; 981 NW2d 112 (2021). Therefore, "has not" indicates that something did not occur in the past, and "is" indicates the current status of something.[8] Taken together, the operative statutory language in MCL 500.3009, therefore, imposes the specified consequences when an "effective choice" has failed to occur before or contemporaneously with issuance or renewal of a policy.

In other words, the statute plainly calls for the insured to have *already made* an "effective choice" by the time the policy is issued, or *when* the policy is actually issued. In this case, Kadish did not do so. There is no evidence of record, that on July 21, 2020, when plaintiff issued Policy 22A, Kadish made an effective choice of reduced coverage limits. To the contrary, plaintiff's own documents suggest this took place on August 13, 2020. Because Kadish did not make an "effective choice under subsection (5)" on July 21, 2020, the operation of the plain language of MCL 500.3009(8) was triggered which required application of the default limits of $250,000 per person and $500,000 per accident.

Courts have traditionally referred to contracts in violation of the law as "void." See *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 599; 648 NW2d 591 (2002), and *Citizens Ins Co of America v Federated Mut Ins Co*, 488 Mich 225, 234; 531 NW2d 138 (1995). A contract that is "void" never had any legal existence, as opposed to a contract that is "voidable," which may be cancelled at the will of one of the parties. *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 537-539; 872 NW2d 412 (2015). Courts have also frequently used the word "void" improperly when actually treating contracts as merely "voidable." *Id.* at 540. In *Epps*, our Supreme Court held that, notwithstanding cases referring to illegal contracts with unlicensed builders as "void," they are really "voidable." *Id*. at 539-553. However, regarding no-fault insurance policies, in cases both before and after *Epps*, our Supreme Court has expressly stated that a provision in a no-fault insurance policy that excludes mandatory coverage requirements is void. *Husted v Dobbs*, 459 Mich 500, 512; 591 NW2d 642 (1999); *Meemic Ins Co*, 506 Mich at 298 n 5.

---

[8] This Court arrived at the same conclusion in *People v Wilson*, 257 Mich App 337, 346-347; 668 NW2d 371 (2003), but our Supreme Court vacated that portion of this Court's opinion, albeit on grounds unrelated to the substantive analysis at issue. *People v Wilson*, 469 Mich 1018 (2004).

This Court has indicated that a contract cannot be reformed if it is void, but rather only if it is in full effect. *Titan Ins Co v Hyten*, 291 Mich App 445, 451; 805 NW2d 503 (2011), rev'd on other grounds 491 Mich 547 (2012). Importantly, caselaw establishes that a *provision within* a no-fault policy will be invalid if that provision conflicts with a statute, and the *policy* will then be reformed to comport with the law. *Pena*, ___ Mich App at ___; slip op at 3. As discussed, something that is "void" *never* had any legal existence. *Epps*, 498 Mich at 540. Logically, if a provision in a no-fault policy contravenes a statutory requirement, that provision is void and, because it never had any legal existence, it cannot thereafter be reformed. Here, the provision in Policy 22A providing for only $50,000 per person and $100,000 per accident violated the no-fault act because it failed to provide mandatory coverage when the policy was issued, rendering that limiting provision void. Therefore, purported election of reduced coverage by Kadish three weeks later could not reform or modify the default statutory requirement. As defendant points out, plaintiff could have issued a new policy in conjunction with Kadish's election, which would have satisfied all of the requirements to provide reduced coverage, but plaintiff did not do so.

Unlike with PIP benefits, an effective choice of reduced bodily injury liability coverage under MCL 500.3009 must be made before or when a policy is issued. The evidence establishes that plaintiff issued the policy in effect at the time of the accident after the effective date of the no-fault amendments and before Kadish made any choice of coverage. The plain language of MCL 500.3009(1) and (8) requires the choice of coverage be made when or before the policy is issued. Because Kadish did not make an effective choice until after plaintiff issued Policy 22A, the policy provided the statutory default coverage, and the policy provision providing reduced coverage was void and not susceptible to being reformed by a belated choice. Therefore, the default policy limits of $250,000 per person must be applied in this case. Accordingly, the trial court erred by granting plaintiff summary disposition and denying defendant summary disposition.

We reverse the trial court's grant of summary disposition to plaintiff and reverse its denial of summary disposition for defendant, and remand for entry of judgment in favor of defendant. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney

-13-